By the Court,

Bronson, Ch. J.
The facts and circumstances to establish the grounds on which the application for an at *189 tachment is made, must be verified by the affidavits of two disinterested witnesses. (2 R. S. 3, § 5.) The cases cited at the bar have fully settled that the mere belief of the witnesses will not be sufficient. Nor is it enough that they have been in formed and believe that certain things have happenéd, They must, in general, speak of facts and circumstances falling under their own observation. It is true that information, which is but another name for hearsay, is a fact; but as a general rule such evidence is not admissible. It may be received under certain circumstances. Information obtained from the family of tha debtor, on inquiry at his residence, may be admitted, in connection with other facts, to show that the debtor has left home; when he went away; where, and upon what business he went; and how long he intended to be absent. But such evidence obtained from other sources would not be admissible. The informant should be called. It may be, also, that the witnesses should be allowed to speak upon information concerning the solvency of the debtor, provided the information comes from persons who are not interested in the proceedings against him. But an affidavit that the witness has been informed and believes that the debtor is insolvent, that he owes a large amount of money, or the like, without the addition of any fact within the knowledge of the witness, or stating when or from whom the intelligence was received, cannot be regarded as of any legal importance.
In examining the "affidavit of the witness Harrington, I will in the first place notice some things which the affidavit does not prove. Although it is probable that the witness knew Bliss, the fact that he knew him is not stated. It does not appear that the witness had ever seen the debtor. That was obviously a fact of great importance in making out a case for an attachment, and it should not have been left to inference or conjecture. Again: The witness says, that Bliss “ has not, according to the knowledge and belief of this deponent, been in the habit of'absenting himself from his residence over two or three days at a time.” I do not understand this as necessarily affirming that the witness knew any thing about the 11 habit” of the debtor in *190 absenting himself from his residence; but only as saying, that the witness had no knowledge or belief that the debtor was usually absent more than two or three days at a time. If the witness had first said that he knew the debtor, and was acquainted with his habits and pursuits, the words which have been quoted would then have had some point; but as they stand in this affidavit, they only prove that the witness had no knowledge of a fact, concerning which he might well be ignorant, although the fact itself existed. The debtor may have been “ in the habit of absenting himself from his residence over two or three days at a time,” and yet this witness may have truly sworn, that he knew nothing of the matter. The last clause of the affidavit is, if possible, still more loose and unsatisfactory. “ This deponent does not understand that said David went on any business that would, or reasonably could, detain him over two days from home.” It no where appears that the witness knew any thing about the business on which Bliss went to Truxton, or how much time would be required to accomplish it. Without such a statement, the affidavit proves nothing whatever to the purpose.
The information which the witness received from Clark, that “ Bliss had threatened to go off or abscond,” is but mere hearsay evidence, and proves nothing. Clark himself should have been sworn. No man would be safe in leaving home, if his property could be attached upon such evidence. A like remark is applicable to the statement of the witness, that *“ he has been informed and understands and believes that 0the said David Bliss is owing a pretty large amount of money, and is somewhat embarrassed in his pecuniary circumstances.” Unconnected with any fact concerning solvency in the knowledge of the witness, and no such fact is stated, this evidence was not admissible. The. person who gave the information should have been called. And besides, the witness may have got his information from the person who wished to obtain the attachment. I cannot but add, that the witness does not pretend to have heard that Bliss was insolvent. There may be a great difference between insolvency, and the existence of the facts stated by the witness. It *191 appears from the other papers sent here by the judge, that this man, who had been absent only nine days when the attachment issued, owned a farm worth nearly five thousand dollars, and personal property worth nearly a thousand more; and that the whole was left in the possession of his family. Although he may have been in debt, and “ somewhat embarrassed in his pecuniary circumstances,” those facts alone, though fully proved, would furnish but little reason to believe that he had secretly departed from the state, or that he kept concealed within it, for the purpose of defrauding his creditors. But I do not consider this hearsay evidence, standing • as it does wholly unsupported by any fact in the knowledge of the witness concerning solvency, as proving any thing whatever. It should be laid out of the case.
Now what are the facts and circumstances which may be considered as established by this affidavit ? I will not stop to inquire whether it was competent to prove what was said by the children of Bliss, without showing their ages, and where they were at the time the information was given. Assuming the evidence to be Legal, the case made by the witness amounts only to this:—he was at the house of Bliss in Pompey on the sixteenth day of June, and was informed by the family that Bliss had gone to Truxton; and that he went the day before, which was Saturday. The witness afterwards heard from the family on several occasions, the last of which was the twenty-third of June, that Bliss had not returned. There is not another particle of legal evidence in the affidavit; and the facts which I have mentioned have no tendency whatever to prove that Bliss had absconded, or that he had done any thing else, for the purpose of defrauding his creditors. He had been gone from home eight days. There is no suggestion that he went away secretly; that he had spoken of returning in a shorter time; or that the family thought there was any thing wrong in his continued absence. We are not told whether he went away on business, or to visit friends; nor that any one went to Truxton to inquire whether Bliss was or had been at that place. It would be utterly unsafe to hold that such an affidavit was. sufficient to authorize the issuing of an attachment.
Motion granted.